[No. 7964–6–I. Division One. January 19, 1981.]

PENTAGRAM CORPORATION, *Respondent,* v. THE CITY OF SEATTLE, ET AL, *Appellants.*

*Douglas N. Jewett, City Attorney,* and *Ellen D. Peterson, Assistant,* for appellants.

*Foster, Pepper & Riviera* and *Marco Magnano, Jr.,* for respondent.

*Harold H. Green, Francis Hoague,* and *Eleanor C. Hoague,* amici curiae.

CALLOW, J.—The City of Seattle appeals from an order of summary judgment requiring it to approve the issuance of a special building and use permit to Pentagram Corporation

for the construction of a restaurant and meeting facility at the 100–foot level of the Space Needle.

In 1961, John Graham & Company acquired the property at the Seattle Center from the City of Seattle in order to construct a Space Needle for the 1962 World's Fair. Because the Space Needle was a structure not covered by the Seattle Building Code, the City Council authorized the issuance of a special building and use permit by ordinance. In addition, the Board of Adjustment and the City Council granted a height variance. Although the original design of the Space Needle provided for two observation platforms, one at the 100–foot level and one at the 300–foot level, neither platform was constructed.

Pentagram Corporation purchased the Space Needle and thereafter submitted preliminary project plans and an environmental checklist to the Seattle Building Department for the construction of a restaurant and meeting facility on the 100–foot level. The superintendent of the building department prepared a declaration of nonsignificance pursuant to the State Environmental Policy Act of 1977, finding that the proposed project would not have a significant adverse impact on the environment and therefore an environmental impact statement was not required. In a subsequent appeal, a hearing examiner affirmed the superintendent's decision, concluding that there was no substantial evidence that the design of the proposed addition to the Space Needle would result in the creation of an aesthetically obnoxious sight open to public view. The examiner also concluded that the Space Needle was not eligible for designation as a historic site under the Seattle Landmarks Ordinance and that the appellants had failed to substantiate its historical nature. No further appeal was taken from the decision of the hearing examiner.

Pentagram subsequently submitted plans for the project to the building department pursuant to section 308 of the Building Code of the City of Seattle, which prior to its repeal provided that "[t]he building official, with the approval of the City Council, may issue special building

and use permits for the construction and occupancy of structures and permit premises not specifically covered in this code." After Pentagram Corporation satisfied the requirements of the building department, the Superintendent of Buildings submitted a proposed resolution to the City Council approving the special permit. The resolution was first considered by the Urban Development and Housing Committee of the City Council, which recommended against approval.

The recommendation of the committee to deny approval of the special permit was then brought before the entire City Council. The council voted 5 to 4 against the resolution. No findings of fact were entered by the City Council stating the reasons for the denial, though a verbatim transcript of the proceedings was taken.

Pentagram sought review by certiorari in the Superior Court of the council's decision and moved for summary judgment. The order granting Pentagram's motion stated:

1. [Pentagram] is granted a declaratory judgment that § 308 of the Seattle Building Code be interpreted as follows:

A. Issuance of a special building permit is mandatory if the building official and the City Council both find that the project conforms to the requirements of the Seattle Building Code with respect to type and quality of construction, fire and life–safety systems, provided, the building official and the City Council may add conditions for construction and occupancy as they deem necessary for the protection of life, property and the public welfare.

2. Retention of the Space Needle's present configuration solely on the ground it has become a symbol is not a valid reason for rejection of a permit to alter that structure and cannot be attached as a condition to the granting of the permit as being necessary for the public welfare. Therefore, denial of petitioner's application for issuance of a special building permit in this case was unlawful.

The trial court permitted the City to reconsider whether additional life–safety conditions should be imposed. The

council thereafter determined that the structure was safe, imposed no additional conditions, and authorized issuance of the permit pursuant to the court order.

## MOOTNESS

The first issue is whether the City's authorization of the permit following the order of summary judgment renders the City's appeal moot.

A case is considered moot if there is no longer a controversy between the parties, *State ex rel. Chapman v. Superior Court,* 15 Wn.2d 637, 131 P.2d 958 (1942); if the question is merely academic, *Grays Harbor Paper Co. v. Grays Harbor County,* 74 Wn.2d 70, 442 P.2d 967 (1968); or if a substantial question no longer exists. *Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972). Although in some jurisdictions an appeal is considered moot if a party voluntarily complies with a writ of mandamus during the pendency of the appeal, *see generally* Annot., 39 A.L.R.2d 153 (1955), we conclude that the inquiry is whether a court can grant effective relief by restoring the parties to the status quo, not whether the party complied with the trial court's order.

The record demonstrates that although the City Council complied with the trial court's order and approved the issuance of the special permit, no further action has been taken by either party. There continues to be a real controversy between the parties and the issues presented are not purely academic. We conclude that effective relief can be granted, and accordingly deny the motion to dismiss the appeal as moot.

## ADMINISTRATIVE ACTION

The next issue is whether the City Council acted legislatively or administratively in denying approval of the special building and use permit pursuant to section 308 of the Seattle Building Code.

Section 308 of the Seattle Building Code, which has now been repealed, provided:

*Special Permits.* The Building Official, with the approval of the city council, may issue special building and use permits for the construction and occupancy of structures and permit premises not specifically covered in this code. For the issuance of such permit, the Building Official and the City Council may attach thereto special requirements and conditions for construction and occupancy as they deem necessary for the protection of life, property and public welfare.

The trial court determined that the action taken by the City Council in denying approval under this section was administrative, and that because Pentagram had complied with all applicable life–safety requirements of the building code, issuance of the permit was mandatory. The City contends that the trial court improperly construed section 308, and that the City Council retains legislative authority in determining whether to approve, deny, or condition the issuance of special building permits. We disagree.

In *Durocher v. King County,* 80 Wn.2d 139, 152–53, 492 P.2d 547 (1972), the court stated:

> In distinguishing between legislative and administrative actions of municipal legislative bodies, courts have frequently adopted two tests stated in 5 E. McQuillin, The Law of Municipal Corporations, § 16.55 (3d ed. 1969 rev. vol.) at page 213:
>
>> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. . . .
>>
>> The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

In applying this test, the court in *Durocher* determined that the City Council acted administratively and not legislatively in granting or denying an "unclassified use permit."

Similarly, in *Lund v. Tumwater,* 2 Wn. App. 750, 755, 472 P.2d 550 (1970), the court held that the action by the City of Tumwater in granting a "special permit" was administrative and not legislative:

> However, every act of a legislative body is not a legislative act. Even though there is contrary authority . . ., it is generally held that the granting of a special permit is an administrative or quasi–judicial act, whether done by the city council or by an administrative body.

(Citations omitted.) *See also State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973).

■ We similarly hold that the action of the City Council in approving or denying a special permit under section 308 of the Seattle Building Code was administrative, not legislative, action. The City Council acted legislatively when it adopted the building code and provided in section 308 that buildings not covered would be the subject of special approval. The approval of a permit under section 308 relates to a subject of a special, not general, character. As the court stated in *State ex rel. Morrison v. Seattle,* 6 Wn. App. 181, 189, 492 P.2d 1078 (1971), "[g]ranting permits which affect specific land uses does not, in our judgment, constitute a legislative act."

The issuance of a special use and building permit under section 308 of the Seattle Building Code was administrative and not legislative action even though done by the City Council. In *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973), the court held that the Seattle Building Code sets forth specific and extensive requirements for the issuance of a building permit, relying upon *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 495, 275 P.2d 899 (1954), which held that "[a]dministrative authorities are properly concerned with questions of compliance with the ordinance, not with its wisdom."

Although section 308 of the Seattle Building Code did not set forth specific standards in determining whether a

special building and use permit should be granted, the absence of standards does not render the issuance of the building permit legislative. Administrative bodies must in most instances be guided by adequate standards to insure against arbitrary and capricious action. *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra.* However, the absence of specific standards is permissible if the subject matter will not admit to more specific standards. *McDonald v. Hogness,* 92 Wn.2d 431, 598 P.2d 707 (1979); *Yakima County Clean Air Auth. v. Glascam Builders, Inc.,* 85 Wn.2d 255, 534 P.2d 33 (1975). Section 308 of the Seattle Building Code was intended to apply to structures not otherwise covered by the building code, and authorized the City Council to attach special conditions relating to the protection of life, property and public welfare. Given the uniqueness of structures contemplated by the ordinance, these standards are as specific as is practical and indicate that the City Council intended to retain administrative and not legislative power. *See also Paal v. Wells,* 305 Minn. 252, 232 N.W.2d 808 (1975); *Zylka v. Crystal,* 283 Minn. 192, 167 N.W.2d 45 (1969).

Our conclusion that the City Council was acting administratively and not legislatively in approving the issuance of a special use permit under section 308 is consistent with the language of that section which states that the City Council "may issue" such permits. Elsewhere in the Seattle Building Code the council used the mandatory language "shall" and it is reasonable to conclude that the City Council intended to retain adjudicatory authority to issue permits for unique structures. *See State ex rel. Pub. Disclosure Comm'n v. Rains,* 87 Wn.2d 626, 555 P.2d 1368, 94 A.L.R.3d 933 (1976); *State ex rel. Beck v. Carter,* 2 Wn. App. 974, 471 P.2d 127 (1970). In *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972), the court discussed the adjudicatory function in the context of zoning decisions:

> The process by which they are made, subsequent to the adoption of a comprehensive plan and a zoning code, is basically adjudicatory.

Generally, when a municipal legislative body enacts a comprehensive plan and zoning code it acts in a policy making capacity. But in amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change. The parties whose interests are affected are readily identifiable. Although important questions of public policy may permeate a zoning amendment, the decision has a far greater impact on one group of citizens than on the public generally.

*See Barrie v. Kitsap County,* 93 Wn.2d 843, 613 P.2d 1148 (1980). It is apparent that the decision of the Seattle City Council in denying approval of the issuance of a special use and building permit under section 308 of the Seattle Building Code is also adjudicatory in nature. Questions of the public welfare permeated the decision; however, the decision specifically affected Pentagram Corporation, the owner of the Space Needle, as well as specific property owners surrounding the proposed structure. The issuance of building permits under the Seattle Building Code generally is considered ministerial in the sense that the applicant is entitled to a permit once it complies with the applicable laws and ordinances. *See, e.g., Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976); *State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 385 P.2d 372 (1963). However, in regard to special structures not covered by the building code, the City Council has the adjudicatory discretion to deny or condition the issuance of a special building and use permit because of considerations concerning life, property and public welfare. *Cf. Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978); *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140, *review denied,* 83 Wn.2d 1002 (1973).

JUDICIAL REVIEW OF ADMINISTRATIVE ACTION

■ Having determined that the City Council acted administratively when it denied approval of the special building and use permit under section 308, the question

arises as to the scope of judicial review of such an administrative decision. As in other zoning and land use decisions in which an administrative body makes a discretionary decision, the role of the judiciary is limited to a determination as to whether the decision satisfies constitutional requirements and is not arbitrary and capricious. *Barrie v. Kitsap County,* 93 Wn.2d 843, 613 P.2d 1148 (1980); *Phillips v. Brier,* 24 Wn. App. 615, 604 P.2d 495 (1979).

A difficulty arises in applying the arbitrary and capricious standard, however, when the administrative decision is guided by general rather than specific standards. In *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* the court discussed *Zylka v. Crystal, supra,* where an ordinance governing the issuance of a special use permit did not specify standards to guide the administrative body in issuing or denying the permit. The *Zylka* decision held that in such a situation the administrative body must make findings of fact showing the basis upon which it denies the permit. In the absence of such findings

> the usual presumption of reasonableness does not attach to its decision, and the burden is upon the administrative body to show that the denial was not arbitrary or capricious. Arguments in favor of imposing these requirements, the court [in *Zylka*] said in a footnote on page 198, either by statute or by judicial decision include:
> (1) To protect the applicant and the public from arbitrary action; (2) to prevent discrimination; and (3) to facilitate and confine the scope of judicial review. See, 2 Rathkopf, Zoning and Planning (3 ed.) p. 54–52; Note, 49 Minn. L. Rev. 973, 1000.

*State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* at 327 n.3. We note that *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* was decided prior to *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978), where the court prospectively imposed the requirement that in a rezone case findings of fact and conclusions or reasons be given for the action of the administrative body in entering its decision. *See Hayden v. Port Townsend,* 93

Wn.2d 870, 613 P.2d 1164 (1980). The requirement of written findings and conclusions in *Parkridge* was based upon the determination in *Barrie v. Kitsap County,* 84 Wn.2d 579, 527 P.2d 1377 (1974), that a rezone hearing is a quasi-judicial proceeding because it is adjudicatory as compared to legislative in nature. Since we similarly find that the issuance of a special building permit is an adjudicatory action, we conclude that written findings and conclusions are necessary in order to establish the basis upon which the decision was made, and to provide a procedural safeguard against arbitrary and capricious action. *See Roseta v. County of Washington,* 254 Ore. 161, 458 P.2d 405, 40 A.L.R.3d 364 (1969); *Garden Court Apartments, Inc. v. Hartnett,* 45 Del. 1, 65 A.2d 231 (1949); *Tillotson v. City Council,* 61 R.I. 293, 200 A. 767 (1938).

We recognize that there are several Washington decisions which hold that when an administrative body acts in an appellate capacity, written findings are not required. *See, e.g., Messer v. Snohomish County Bd. of Adjustment,* 19 Wn. App. 780, 578 P.2d 50 (1978); *Washington Ass'n for Retarded Citizens v. Spokane,* 16 Wn. App. 103, 553 P.2d 450 (1976); *State ex rel. Morrison v. Seattle,* 6 Wn. App. 181, 492 P.2d 1078 (1971). These cases are distinguishable, however, because here the City Council acted as a fact finder, not in an appellate capacity.

We hold that when a city council exercises adjudicatory administrative discretion in denying a building permit under a section of a building code that contains general as compared to specific standards, a presumption of reasonableness does not attach to its decision, and the council's decision in denying the building permit in the absence of written findings and conclusions must be deemed to be arbitrary and capricious. *Parkridge v. Seattle, supra.*

The record demonstrates that the City Council did not enter written findings and conclusions in denying approval of Pentagram's application for a special building and use permit. The City argued before the trial court and this

court that the basis for the denial was that the Space Needle was the public symbol for the City of Seattle and the proposed addition would materially affect the symbol. The amici curiae on appeal support the City's contentions and also attempt to justify the City Council's action on other grounds. In the absence of written findings and conclusions, we cannot presume that any of these reasons was the basis upon which the City Council made its decision, or that it otherwise acted reasonably. Although we disagree with the trial court's determination that the granting or denying of the special building and use permit was ministerial, in the absence of written reasons and findings the City Council acted arbitrarily and capriciously in denying the permit. The writ of mandamus was, therefore, properly issued. *See State ex rel. Craven v. Tacoma, supra;* 9 E. McQuillin, *Municipal Corporations* § 26.221 (3d ed. 1978).

Affirmed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied April 1, 1981.