FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8: 47

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FREDERICK J. KARPMAN and ELLEN S. KARPMAN, Trustees of the KARPMAN TRUST, | No. 42830-0-II |
| Appellants, | |
| v. | |
| OLEG ROZENFELD, aka OLEG SHKLYARENKO, aka OLEG FHKLWAREMKO, aka OLEG SHKLARENKO, aka OLEG SHKLYAPENKO, aka OLEG HKLYARENKO, aka OLEY SHKL, aka OLEY YARENKO, a single person, | ORDER CORRECTING UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| MASON COUNTY TITLE INSURANCE COMPANY, a Washington corporation, | |
| Defendant. | |

The unpublished opinion filed November 19, 2013 is corrected as follows:

The caption is changed so that Frederick J. Karpman and Ellen S. Karpman, Trustees of

the Karpman Trust, are listed as Respondents and Oleg Rozenfeld, et ux., is listed as Appellant.

No. 42830-0-II

**DATED** this 19TH day of MARCH , 2014.

**IT IS SO ORDERED.**

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Maxa, J.

FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FREDERICK J. KARPMAN and ELLEN S. KARPMAN, Trustees of the KARPMAN TRUST,<br><br>                    Appellants,<br><br>   v.<br><br>OLEG ROZENFELD, aka OLEG SHKLYARENKO, aka OLEG FHKLWAREMKO, aka OLEG SHKLARENKO, aka OLEG SHKLYAPENKO, aka OLEG HKLYARENKO, aka OLEY SHKL, aka OLEY YARENKO, a single person,<br><br>                    Respondent<br><br>and<br><br>MASON COUNTY TITLE INSURANCE COMPANY, a Washington corporation,[1]<br><br>                    Defendant. | No. 42830-0-II<br><br><br><br>UNPUBLISHED OPINION |

HUNT, J. — Oleg Rozenfeld[2] appeals two orders in a lawsuit filed by Frederick J. and Ellen S. Karpman, Trustees of the Karpman Trust (the "Karpmans") claiming that he had breached a real estate purchase and sale agreement: an order of default and an order denying his

---

[1] Mason County Title Insurance Company was dismissed from the action without costs or attorney fees by the Amended Judgment filed on December 13, 2011.

[2] Although the caption has several aliases listed for Oleg Rozenfeld, we will refer to the appellant as Rozenfeld for the purposes of this appeal.

motion to quash subpoenas and for sanctions. He argues that the superior court erred in (1) denying his motion to set aside its order of default; (2) denying his motion to quash subpoenas duces tecum issued to Rozenfeld's banks; and (3) denying his request for subpoena-related sanctions against the Karpmans.[3] We affirm the superior court's denial of Rozenfeld's motion to vacate, do not address denial of his other motions because they are moot, and award the Karpmans attorney fees and costs on appeal.

## FACTS

### I. PURCHASE AND SALE AGREEMENT; FINANCING ADDENDUM

On March 26, 2011, Oleg Rozenfeld and Frederick and Ellen Karpman entered into a Real Estate Purchase and Sale Agreement ("Agreement") requiring Rozenfeld to purchase the Karpmans' Shelton residence by April 29. This Agreement included a "Financing Addendum," which provided that Rozenfeld's obligation to purchase the home was contingent on his "[g]ood [f]aith" efforts to obtain financing through a Federal Housing Administration (FHA) loan.[4]

---

[3] Normally, we do not accept direct appeals of interlocutory orders such as these. Nevertheless, our court has treated this case thus far as a direct appeal. Thus, in the interests of judicial economy and resolving the parties' case on the merits, we neither dismiss this "appeal" nor compel Rozenfeld to appeal the final default judgment. *See* RAP 1.2(a) and (c).

[4] This FHA loan contingency provided, in pertinent part:
> This Agreement is contingent on Buyer obtaining the following loan or loans to purchase the Property: . . . FHA. . . . If not waived, the Financing Contingency shall survive the Closing Date.

Clerk's Papers (CP) at 114. An "FHA loan" is a mortgage loan provided by federally qualified lenders and insured by the Federal Housing Administration. The lenders here were Sterling Savings Bank and Cobalt Mortgage.

2

No. 42830-0-II

Clerk's Papers (CP) at 114, 115. This Financing Addendum also required Rozenfeld to obtain the Karpmans' written consent before changing lenders.[5]

Before entering into the Agreement, Rozenfeld had provided the Karpmans with a letter from FHA-insured Sterling Savings Bank pre-approving him for a loan, subject to several conditions, including verification of Rozenfeld's income and assets. After entering into the Agreement, Rozenfeld applied to Sterling for an FHA loan. Before Sterling formally resolved his application, however, and without first seeking the Karpmans' written consent, Rozenfeld withdrew his loan application from Sterling and applied to Cobalt Mortgage for a loan. Cobalt denied his loan application for insufficient stable income and irregular employment.

Rozenfeld failed to meet the April 29 deadline for purchasing the Karpmans' home. Under the terms of the Financing Addendum, Rozenfeld's changing lenders without the Karpmans' written consent waived the financing contingency, obligating him to purchase the property regardless of whether he had been able to obtain an FHA loan.

## II. PROCEDURE

### A. Service of Summons and Complaint

Two months later, on June 30, the Karpmans sued Rozenfeld for breach of contract. The Karpmans were unsuccessful in attempting to serve Rozenfeld in person at his Sylmar, California address which he had used on the Agreement, on his home loan bank applications, and in other

---

[5] The Financing Addendum further qualified the FHA loan contingency with the following pertinent provision:

> If Buyer . . . . (iii) changes the lender without Seller's prior written consent after the agreed upon time to apply for financing expires, then the Financing Contingency shall be deemed waived.

CP at 114.

3

matters as late as June 2011. The Karpmans then mailed a letter to Rozenfeld at his Sylmar address; but it was returned as undeliverable with expired forwarding, which showed a Longbranch, Washington address for Rozenfeld.[6] The Karpmans hired a private investigator, who found four possible addresses for Rozenfeld in the Los Angeles area. The Karpmans attempted to serve Rozenfeld at each one of these addresses, but none proved successful.

The Karpmans then hired process server Darrin Sanford to serve their summons and complaint on Rozenfeld at the expired forwarding Longbranch address. Sanford understood that Rozenfeld might be trying to avoid service. On August 2, Sanford approached the Longbranch house; through a window he saw a man fitting Rozenfeld's description. When Olga Almanskaya came out onto the front porch, Sanford asked for Rozenfeld, stating that he had legal documents for him. Almanskaya told Sanford that Rozenfeld was not home. Sanford gave Almanskaya the summons and complaint, but she tried to refuse them, saying, "He is not my husband." CP at 145. She followed Sanford down the driveway, repeating that she could not accept the papers. She tried to leave them on the hood of Sanford's car, but he told her he was leaving the papers with her and that she had been served.

The next day, the Karpmans' counsel mailed a certified letter to Rozenfeld at the Longbranch address, informing him that he had been served by the summons and complaint that Sanford had left with Almanskaya the day before. Rozenfeld signed the certified mail receipt for the letter on August 4.

---

[6] The Karpmans also hired William Peck to inspect Rozenfeld's Sylmar residence on June 2, at which time Peck noted that "[t]here was no furniture inside the house and it appeared to have been abandoned." CP at 61.

## B. Subpoenas

On July 12, the Karpmans issued subpoenas duces tecum to Sterling Savings, Cobalt Mortgage, Prudential Northwest Real Estate, and Mason Title Insurance Company, all companies involved in the purchase and sale transaction, for information about Rozenfeld's failure to obtain a loan.[7] A Cobalt Mortgage representative called Rozenfeld about the subpoenas and the lawsuit.[8] The banks produced the requested documents, which were filed with the court.

## C. Default

Rozenfeld did not file an answer or otherwise respond to the Karpmans' summons and complaint. On August 23, the superior court entered an order of default against Rozenfeld. Two days later, Rozenfeld's counsel contacted the Karpmans and asked them to stipulate to an order vacating the default; the Karpmans declined. On September 15, Rozenfeld moved to vacate the order of default. In support of his motion,[9] he submitted Almanskaya's declaration that (1) she had received "correspondence" for Rozenfeld delivered to the Longbranch address; (2) she had placed the "correspondence" in her "incoming mail" box and had neither given it to Rozenfeld

---

[7] None of these subpoenas were mailed to or served on Rozenfeld. Two of the subpoenaed banks, Cobalt Mortgage and Sterling Savings Bank, responded to the subpoena and released Rozenfeld's loan application documents to the Karpmans.

[8] Despite Rozenfeld's request not to provide the documents, Cobalt released them, although it is not clear from the record when Cobalt contacted Rozenfeld or when it released the documents.

[9] Rozenfeld also argued that his "meritorious defense" to the action entitled him to have the default set aside. Br. of Appellant at 18. This defense appears to be that, although he was unable to meet the financing contingency of the Agreement, his loan-seeking efforts were made in good faith and therefore he did not default on the agreement.

nor told him about it; and (3) she did not give the documents to Rozenfeld until after he had received the August 24 letter from Karpmans' counsel. CP at 219, 220. Almanskaya's declaration did not mention her August 2 encounter and discussion with Sanford or that Sanford had personally delivered the summons and complaint to her at the Longbranch address.

Rozenfeld also advised the Karpmans that he believed that the subpoenas to the banks had been improperly issued and that he would move to strike any declarations that relied on information obtained from the subpoenaed documents. When the Karpmans relied on some information obtained from the subpoenas in responding to Rozenfeld's motion to vacate, Rozenfeld moved to quash the subpoenas and for sanctions against the Karpmans on September 28.

The superior court denied Rozenfeld's motion to vacate, ruling that Rozenfeld had not shown excusable neglect for failing to respond to the summons and complaint and, thus, did not meet the standard for setting aside a default order under CR 55. The superior court also denied Rozenfeld's motion to quash the subpoenas because Rozenfeld had failed to show prejudice from any irregularity in the service of the subpoenas on the banks, and because the subpoenaed documents were already in the court's file.[10] Instead, the superior court invited the parties to consider entering into an agreed order to redact any personal identifiers in the documents under GR 15.[11]

---

[10] The superior court also ruled that any failure to have served Rozenfeld with the supoenas was harmless.

[11] The record does not show that the parties ever reached such an agreement.

No. 42830-0-II

The superior court subsequently issued written orders denying the motion to quash and the motion to set aside the default. Rozenfeld appeals these orders.[12]

## ANALYSIS

### I. MOTION TO SET ASIDE ORDER OF DEFAULT

Rozenfeld argues that, under CR 55, the trial court had "good cause" to set aside the order of default (1) because he presented sufficient evidence of "excusable neglect"[13]; (2) on learning about the Karpmans' lawsuit, he had acted with due diligence; and (3) he had meritorious defenses to the Karpmans' claims. Br. of Appellant at 8. Because the record supports the superior court's finding that Rozenfeld failed to show good cause for his delayed response to the Karpmans' lawsuit, we do not reach his argument about meritorious defenses.

### A. Standard of Review

Washington courts generally disfavor default orders and judgments. *See Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, No. 67832-9-I, 2013 WL 4562718, at *3 (Wash. Ct. App. Aug. 19, 2013) (citing *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979)). A superior court may vacate an order of default for good cause or "upon such terms as the court deems just." CR 55(c)(1); *Seek Sys., Inc. v. Lincoln Moving/Global Van*

---

[12] One month after Rozenfeld filed his November 16, 2011 appeal from these orders, on December 13, the superior court entered final judgment against Rozenfeld, awarding damages and attorney fees to the Karpmans for Rozenfeld's violation of the Agreement. Our court records do not show that Rozenfeld appealed this default judgment.

[13] Rozenfeld argues that the superior court should have vacated the order of default under either CR 55(c), which governs motions to vacate an order of default, or CR 60(b), which governs motions to vacate a default judgment. The issue, here, however, is whether the superior court improperly denied Rozenfeld's motion to vacate the order of default before it was reduced to judgment. Therefore, we apply the CR 55(c)(1) "good cause" test.

7

No. 42830-0-II

*Lines, Inc.*, 63 Wn. App. 266, 271, 818 P.2d 618 (1991). In determining whether the party seeking to set aside an order of default has shown good cause under CR 55(c), the superior court may consider excusable neglect and due diligence as factors. *Seek Sys., Inc.*, 63 Wn. App. at 271.

Courts determine excusable neglect on a case-by-case basis. *Gutz v. Johnson*, 128 Wn. App. 901, 918-19, 117 P.3d 390 (2005) (citing *Norton v. Brown*, 99 Wn. App. 118, 123, 992 P.2d 1019 (1999)), *aff'd sub nom.*, *Morin v. Burris*, 160 Wn.2d 745, 161 P.3d 956 (2007). The superior court has broad discretion in ruling on whether the facts demonstrate excusable neglect; in so doing, it may make credibility determinations and weigh facts in order to resolve the issue.[14] *See Johnson v. Cash Store*, 116 Wn. App. 833, 847-49, 68 P.3d 1099 (upholding superior court's ruling that neglect was inexcusable based on credibility determinations and weight of evidence).

> The decision to set aside an order of default is generally within the discretion of the trial court, subject to the good cause requirement of CR 55(c). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."

*Canam Hambro Sys., Inc. v. Horbach*, 33 Wn. App. 452, 453-54, 655 P.2d 1182 (1982) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

---

[14] We do not review the superior court's credibility determinations. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)).

No. 42830-0-II

### B. Failure to Show Excusable Neglect/Good Cause

Here, the superior court reviewed declarations submitted by the parties detailing the manner of service of the Karpmans' summons and complaint on Rozenfeld and Rozenfeld's and Almanskaya's responses to this service. Process server Darrin Sanford declared that, when he served Almanskaya at Rozenfeld's Longbranch, WA residence on August 2, 2011, he had informed her that she was being served with legal papers for Rozenfeld. The next day, on August 3, the Karpmans' counsel sent a certified letter to Rozenfeld at the same Longbranch address, telling him that Almanskaya had been served with a summons and complaint against him. The certified letter bore a return receipt, which required the recipient to sign for it; the return receipt bore the printed name "Oleg Rozenfeld" as having accepted delivery of this letter on August 4. CP at 158.

Rozenfeld does not contest that Almanskaya was properly served on his behalf two days earlier on August 2. Yet he waited more than 20 days[15] after service before contacting counsel.[16] Rozenfeld explained this delay by claiming that Almanskaya had not given him the summons and complaint before the court entered the default order. He did not, however, argue that he had never signed for or received the certified letter on August 4.

Rozenfeld correctly argues that excusable neglect and due diligence are not the only ways to show "good cause." Br. of Appellant at 15. But he mistakenly contends that the superior

_____

[15] CR 12(a)(1) requires a defendant to serve his answer within 20 days of service of the summons and complaint.

[16] Rozenfeld declared that he had contacted legal counsel after receiving the summons and complaint from Almanskaya, he had contacted legal counsel on August 24, 2011. Rozenfeld's counsel filed a Notice of Appearance on September 6.

9

court concluded that "excusable neglect is an indispensable element of 'good cause' under CR 55" in setting aside an order of default. Br. of Appellant at 15. Instead, the superior court noted that a "default *judgment*" should not be vacated unless "it can be shown that there is a good cause, including excusable neglect, to set it aside" under CR 60(b). VRP at 12 (emphasis added). Again, failure to show excusable neglect is a *factor* in a trial court's finding of failure to show good cause for not timely responding to a lawsuit. *Seek Sys., Inc.*, 63 Wn. App. at 271. But Rozenfeld's argument misses a different key factor here—that the superior court implicitly found not credible his sole evidence of "good cause" and "excusable neglect," namely, his and Almanskaya's claim that she had failed to give him the summons and complaint. VRP at 12. We defer to the superior court on matters of witness credibility. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980) (citing *Beeson v. Atlantic-Richfield Co.*, 88 Wn.2d 499, 563 P.2d 822 (1977)); *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). Thus, Rozenfeld was left with no credible excuse for his delay in responding to the summons and complaint.

## C. "Meritorious Defense"

Because it found that there was no good cause to set aside the default, the superior court did not reach the question of whether Rozenfeld might have asserted a meritorious defense had he timely answered the summons and complaint. Nevertheless, Rozenfeld argues on appeal that (1) "excusable neglect is not required to set aside an order of default under the less stringent standards of CR 55 where the defendant presents a meritorious defense before the entry of a default judgment"; and (2) he had a meritorious defense to the Karpmans' suit. Br. of Appellant at 16. This argument also fails.

Rozenfeld cites *Canam Hambro Systems* in support of his argument that his meritorious defense constitutes good cause for vacating the order of default. He is correct that this was the result in *Canam.* But, unlike here, the superior court in *Canam* had examined and rejected the defendant's meritorious defense in a summary fashion, ignoring material questions of fact, in denying the motion to set aside the order of default. 33 Wn. App. at 454-55. This substantive ruling on the merits of the defense was the sole basis for the denying the motion; the superior court never addressed excusable neglect for defendant Horbach's delay in responding to the summons and complaint. *Canam,* 33 Wn. App. at 454. And, in reversing the superior court, Division One of our court held that its ruling on the legal and factual merits of Horbach's defense was "untenable."[17] *Canam,* 33 Wn. App. at 456.

The *Canam* court did not hold that the superior court *must* examine potential meritorious defenses as possible good cause for vacating an order of default under CR 55(c). Rather, it held that an asserted defense to an action *can be good cause* to set aside an order of default but that the superior court in that instance had erred in considering the asserted defense and reaching an untenable conclusion on its merits. *Canam,* 33 Wn. App. at 455-56. In so doing, however, Division One did not retreat from the primary requirement for vacating an order of default under CR 55(c), namely the showing of good cause, including its excusable neglect component:

---

[17] More specifically, the appellate court ruled:

> While excusable neglect *and* a meritorious defense are not necessarily required to set aside an order of default as opposed to a default judgment, assertion of the two provides the good cause required by CR 55(c). The reasons given by the trial court for refusing to set aside the default are, as discussed above, *untenable.*

*Canam,* 33 Wn. App. at 456 (emphasis added).

> CR 55(c) provides: "For good cause shown and upon such terms as the court deems just, the court may set aside an entry of default . . .." In contrast with CR 60(e), which requires that a defendant seeking to vacate a default *judgment* show a meritorious defense to the action, *a party seeking to set aside an order of default under CR 55(c) prior to the entry of the judgment need only show good cause.* *See Johnston v. Medina Improvement Club, Inc.*, 10 Wn.2d 44, 116 P.2d 272 (1941) (antedates Civil Rules).

*Canam*, 33 Wn. App. at 453 (alteration in original) (second emphasis added). The *Canam* court noted that in support of his motion to set aside the order of default, defendant Horbach had submitted an affidavit asserting both excusable neglect and a meritorious defense; yet the trial court had focused on only the merits of the defense, which it had wrongly decided. *Canam*, 33 Wn. App. at 453, 455.

Here, in contrast, at the outset the superior court addressed the required "good cause" component for setting aside an order of default under CR 55(c); and it ruled that Rozenfeld's failure to show excusable neglect in his delayed response to the Karpmans' summons and complaint was sufficient reason to deny his motion. VRP at 12. Thus, the superior court here did not need to address Rozenfeld's potential meritorious defenses, as the superior court had erroneously determined in *Canam.* Despite reversing the superior court's untenable conclusion in *Canam*, the appellate court nevertheless recognized:

> The decision to set aside an order of default is generally within the discretion of the trial court, subject to the good cause requirement of CR 55(c). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn. 2d 12, 26, 482 P.2d 775 (1971).

*Canam*, 33 Wn. App. at 453-54.

No. 42830-0-II

In accordance with *Canam*, we reiterate that the issue before us is whether the superior court abused its discretion in setting aside an order of default, not a default judgment. We hold that the superior court did not abuse its considerable discretion in denying Rozenfeld's motion to set aside the order of default.

## II. MOOT MOTIONS

### A. Motion To Quash

Rozenfeld next argues that the superior court erred in denying his motion to quash the Karpmans' subpoenas duces tecum served on the banks to which he had applied for loans. He contends that, at the time these subpoenas were issued, the superior court lacked jurisdiction over him. He also complains that the Karpmans never mailed him or otherwise served him with these bank subpoenas. Because we affirm the superior court's denial of Rozenfeld's motion to vacate the order of default, the judgment of default against him stands, his motion to quash these subpoenas was moot,[18] and we do not further consider this issue.[19]

---

[18] CR 55(a)(2) precludes a defaulted party from responding to or "otherwise defend[ing]" against a pleading without leave of court. Because Rozenfeld defaulted and the superior court left the order of default intact, he no longer has a live case or controversy. *See Price v. Price*, 174 Wn. App. 894, 902, 301 P.3d 486 (2013) (citing *Pentagram Corp. v. Seattle*, 28 Wn. App. 219, 223, 622 P.2d 892 (1981)) (the Court of Appeals "consider[s] a case moot if there is no longer a controversy between the parties, if the question is merely academic, or if a substantial question no longer exists." (internal citations omitted)).

[19] Even if there had been some sort of defect in the subpoenas' service, once the subpoenaed documents became part of the court record, the superior court could have protected Rozenfeld's privacy by (1) following the superior court's suggestion to meet with the Karpmans to agree on protective redactions; or (2) asking the superior court to seal the documents under GR 15. The record does not show that Rozenfeld pursued either alternative; thus, he failed to preserve a potential GR 15 issue for appeal. RAP 2.5(a).

13

B. Motion for Sanctions

Rozenfeld also argues that the superior court erred in failing to impose sanctions against the Karpmans for failing to serve him with the third party subpoenas duces tecum. Because Rozenfeld's motion to quash the subpoenas was moot once the superior court defaulted him, his request for sanctions was also moot.[20] We hold, therefore, that the superior court did not abuse its discretion in denying Rozenfeld's request for sanctions under CR 45 after it denied his motion to quash the bank subpoenas.

III. ATTORNEY FEES

The Karpmans request attorney fees under RAP 18.1 and the underlying real estate contract provision for awarding "attorney fees and expenses" to the prevailing party in

---

[20] Even were we to address the merits of Rozenfeld's motion for sanctions, we would find no abuse of discretion in the superior court's refusal to impose such discovery sanctions. *See Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 854, 292 P.3d 779 (2013) (citing *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 629, 818 P.2d 1056 (1991) and *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993)). Contrary to Rozenfeld's argument, the mandatory language in CR 45(c)(1) does not compel imposition of sanctions under the circumstances here because CR 45(c)(1) clearly refers to sanctions for imposing undue burden or expense on the *"person subject to that subpoena,"* which here were the banks, not Rozenfeld. CR 45(c)(1) (emphasis added). *See also Wash. State Physicians Ins. Exch. & Ass'n*, 122 Wn.2d at 338. Furthermore, the record contains no evidence that the subpoenaed banks either were subject to undue burden or expense or sought CR 45(c)(1) sanctions below.

No. 42830-0-II

litigation.[21] CP at 112. Because the Karpmans are the prevailing party, we award them costs and attorney fees on appeal.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Maxa, J.

---

[21] Rozenfeld also requests fees based on this contractual language. Because he is not the prevailing party, he is not entitled to attorney fees under this provision.