# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANIELLE TETRAULT PESTARINO, | No. 86578-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| BART XAVIER PESTARINO, | UNPUBLISHED OPINION |
| Appellant. | |

COBURN, J. — Bart Pestarino appeals the entry of a one-year domestic violence protection order (DVPO) protecting Danielle Pestarino and their minor child.[1] Substantial evidence supports the trial court's finding that Bart engaged in acts of domestic violence and Bart otherwise fails to establish a constitutional violation or error. We affirm.

## FACTS

Bart and Danielle married in December 2022 and their child was born a year later. When they met and began dating, Danielle, a Canadian citizen, was working in Skagit County on a travel nursing contract assignment with a temporary work visa associated with that employment. At some point after the parties married and Danielle's travel nurse contract had ended, the parties submitted an application for Danielle to

---

[1]Because the parties share the same last name, we use their first names for clarity.

obtain a "green card," and as a part of that process, Bart was required to sign an "Affidavit of Support," agreeing to reimburse the federal government in the event that Danielle received public assistance.

In February 2024, Danielle filed a petition for a DVPO on behalf of herself and the parties' child against Bart. Danielle's petition identified the "most recent incident" as a "physical assault" that took place on December 26, 2023. Danielle alleged that while she was wearing a baby carrier that held the parties' 3-week-old infant, Bart threw a wooden chair at her and hit her on the thigh. Danielle stated that she tried to escape by going upstairs, and Bart pushed her, while still carrying the baby, into a basement bedroom and "smacked" her phone out of her hands to prevent her from calling the police. Danielle explained in her declaration that she was afraid to report the incident to medical providers when she took the baby to a previously scheduled appointment on the day of the incident. However, Danielle provided evidence that she contemporaneously told her doula what happened in a text message and also communicated with Bart's mother, who offered refuge at her home.

Danielle also described verbal arguments, threats, and intimidating remarks, and alleged that Bart physically assaulted her on several previous occasions in 2023. Danielle claimed that Bart threatened divorce, "her immigration status," cancellation of her health insurance, and other "legal trouble." Danielle also alleged that in January 2023, during an argument about moving her clothing into the parties' shared bedroom, Bart forbade her from moving things in his home and urinated on a box of her clothing. After Bart filed a petition for legal separation in February 2024, Danielle permanently

moved out of the home she shared with Bart. Danielle declared that Bart owned multiple firearms and had made threats to harm law enforcement if they attempted to remove his firearms or others who entered his property without his permission.

In a responsive declaration, Bart characterized Danielle's petition as "retaliation," a ploy to gain an advantage in the pending family law matter, and laying the groundwork for a plan to fraudulently secure a visa based on domestic violence victim status. Bart posited that Danielle was suffering from post-partum depression or other mental health condition. Providing his own version of some incidents Danielle described, Bart denied throwing a chair at Danielle, and claimed he simply removed a chair because Danielle threatened to endanger herself and the baby by standing on it with the baby in a carrier. Bart admitted that he urinated on a box of Danielle's clothing, but only because she "blocked" the bedroom doorway. Bart claimed he did not prevent Danielle from reporting any incident to law enforcement because his home was only two blocks away from the police station and Danielle could have walked there at any time.

Bart denied interfering with Danielle's pending "green card" application. However, he explained that, in January 2024, because he believed Danielle intended to move out of his home, he withdrew the "Affidavit of Support" he had previously submitted in support of her application, as he was no longer willing to assume the risk of being the "financial backstop." Finally, asserting that Danielle's "wild accusations" were unsubstantiated and "flawed," Bart asked the court to impose CR 11 sanctions against Danielle.

Both parties submitted documentary evidence, including medical records, screen shots of text messages, and three police reports generated by 911 calls made by each party in January 2024. None of the reports indicated that law enforcement concluded that any party committed domestic violence.

The parties appeared, represented by counsel, at a March 2024 hearing on the petition before a superior court commissioner. The court indicated that it had thoroughly reviewed the file, and, after considering the sworn statements and documents filed by the parties and arguments of counsel, the court entered a one-year DVPO protecting Danielle and the parties' child. The court orally ruled, "[i]t's clear to me that there is domestic violence going on in this home, both physical and by way of coercive control." Specifically, the court noted that one example of exerting coercive control set forth in Washington's civil protection order statute is contacting authorities regarding an individual's suspected or actual immigration status, and stated that Bart "is using that as a way to control" Danielle. The court also found that Bart represented a "credible threat" to Danielle's safety and ordered Bart to surrender all firearms in his possession to law enforcement and prohibited him from possessing or purchasing firearms or other dangerous weapons for the duration of the DVPO.[2] The DVPO did not preclude Bart's visitation with the parties' child if ordered in the family law proceeding.

---

[2] Bart asserted below that he had entrusted seven firearms, including one registered to Danielle, to his parents. Noting that no declaration from Bart's parents to that effect was in the court file, the trial court nevertheless ordered the surrender of weapons.

DISCUSSION

Representing himself on appeal, Bart claims (1) the trial court erred when it concluded that he engaged in coercive control by actions related to Danielle's immigration status, (2) the DVPO proceeding violated his constitutional right to due process, and (3) the DVPO's firearm restrictions violated his rights under the Second Amendment.

As an initial matter, Danielle urges us to dismiss Bart's appeal on two separate bases. First, Danielle argues that the appeal is moot because the DVPO has now expired. A case is moot if there is no longer a controversy between the parties and the question presented is merely academic. Pentagram Corp. v. City of Seattle, 28 Wn. App. 219, 223, 622 P.2d 892 (1981). However, a case is not moot if we can still provide effective relief. Id. "Effective relief" can include cleansing a person's record and reputation of the "continuing stigma" of a protection order. Hough v. Stockbridge, 113 Wn. App. 532, 537, 54 P.3d 192 (2002), rev'd on other grounds, 150 Wn.2d 234 (2003). Here, Bart asserts that this court can still provide effective relief because reversal of the DVPO would effectively terminate an "adverse personnel action" related to his security clearance, employment, and pension. In these circumstances, it appears that we may still provide effective relief and we address the merits of his appeal.

Second, Danielle contends that Bart's appeal should be dismissed because he fails to provide adequate legal support for his arguments and largely fails to include proper citations to the record. See RAP 10.3(a)(6) (appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and

references to relevant parts of the record"). However, the Rules of Appellate Procedure are "liberally interpreted to promote justice and facilitate the decision of cases on the merits" and we do not determine cases solely "on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). No such compelling circumstances exist here where we are able discern the substance of Bart's arguments, the legal authority he relies on, and the relevant facts. We decline to dismiss the appeal on procedural grounds.

We review the decision to grant or deny a DVPO for an abuse of discretion. Rodriguez v. Zavala, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

When, as here, the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the court's findings of fact and, if so, whether those findings support the conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Marriage of Fahey, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). We "'view the evidence and reasonable inferences in the light most favorable to the party who prevailed' below"—in this case, Danielle. Garza v. Perry, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023) (quoting State v. Living Essentials, LLC, 8 Wn. App. 2d

1, 14, 436 P.3d 857 (2019)). We "defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony." Knight v. Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). And we may affirm the superior court on any basis supported by the record. State v. Bunner, 86 Wn. App. 158, 161, 936 P.2d 419 (1997).

Chapter 7.105 RCW governs the issuance of civil protection orders. Under RCW 7.105.225(1), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." For a DVPO, the statute requires a court to find that "the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). RCW 7.105.010(9)(b) defines "domestic violence" for purposes of a protection order as:

> [p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one family or household member by another family or household member.

The statute defines "coercive control" as:

> a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty.

RCW 7.105.010(4)(a). As relevant here, coercive control includes communicating an intent to "[c]ontact local or federal agencies based on actual or suspected immigration status." RCW 7.105.010(4)(a)(i)(E)(IV).

### Coercive Control

Bart claims the trial court misconstrued RCW 7.105.010(4) and ignored applicable statutory exceptions when it found that withdrawing his "Form I-864 Affidavit

7

of Support" amounted to coercive control. This is so, he argues, because federal law authorized him to withdraw the form, see 8 C.F.R. § 213a2(f) (sponsor may "disavow" an affidavit of support before decision on pending application), he did not interfere with Danielle's green card application, and Danielle's immigration status was known to authorities because of her pending application. Bart contends that entry of the DVPO based on this action unlawfully punished him for "properly complying with federal immigration law."

But we need not decide whether the conduct related to Danielle's pending immigration application amounted to coercive control under statute, or whether any other alleged coercive acts met the statutory definition. Danielle described both acts of physical violence and acts of coercive control and it is clear from the record that the trial court relied on both bases to conclude that Bart perpetrated domestic violence.[3]

In addition to the December 2023 incident, Danielle stated that in March 2023, during an argument about a bike ride, Bart wrestled her to the ground and placed her in a headlock because she was holding his bike shoe, and said he would not submit her immigration documents if she told anyone. Danielle also declared that, after she damaged a wall while carrying heavy items down a flight of stairs, Bart "exploded," slapped items out of her hands, and chased her. Danielle reported that during an October 2023 argument, Bart "grabbed" her arms and tried to "drag" her into the bedroom. And Danielle described a November 2023 incident when she tried to get out

---

[3] Insisting that the DVPO is solely based on a finding of coercive control, Bart inaccurately attributes Danielle's counsel's remark that "[t]his is one of the most clear-cut coercive control cases that I've ever seen," to the trial court.

of a vehicle Bart was driving while it was stopped at a red light. According to Danielle, after Bart refused to let her out and the two fought over control of the steering wheel, Bart continued driving while holding her by the neck of the sweater, face-down in the center console, before he eventually stopped the car.

Bart appears to assert that this evidence does not support the DVPO because the trial court expressly cited only the December 2023 incident in its oral ruling (referring to "chairs being thrown" and "interference" with Danielle's ability to contact law enforcement). He therefore claims (1) that the court discounted all incidents other than the one specifically referenced in its oral ruling, (2) that, apart from her testimony about the December 2023 incident, the court found Danielle's testimony otherwise not credible, and (3) that the court "inexplicably cherry-picked" evidence by crediting some of Danielle's claims and rejecting others. We disagree with these characterizations.

The trial court made credibility determinations about witness testimony when it found, as the trier of fact, that Bart subjected Danielle to domestic violence. We do not revisit those determinations on appeal. See Knight, 178 Wn. App. at 937. Failing to mention some incidents Danielle testified about does not equate to an adverse credibility finding. And nowhere did the court indicate that it relied exclusively on the events of December 26, 2023. There is no basis in law or logic to infer the court did not believe aspects of Danielle's testimony. And beyond that, there is simply no support for the premise that the trier of fact must give equal weight to all of the testimony provided by a particular witness.

Substantial evidence in the record—Danielle's sworn statements about physical assault and corroborating evidence in the record—supports the DVPO, apart from any evidence of coercive control.

Due Process

Bart next argues, for the first time on appeal, that the DVPO violated his right to due process because it imposed "criminal-type penalties" by restricting his movement and infringing on his right to bear arms, but he was not afforded the requisite procedural safeguards. In particular, Bart points out that there was no discovery process, the court relied on hearsay evidence that would be inadmissible in other proceedings, he had no opportunity to "face [his] accuser," and the petitioner was not required to establish the criteria for a DVPO beyond a reasonable doubt.

The fundamental basis of due process when the State seeks to deprive a party of a protected interest is notice and the right to be heard. In re Marriage of McCann, 4 Wn. App. 2d 896, 916, 424 P.3d 234 (2018); Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Matthews sets forth a series of factors courts analyze to assess a due process claim. 424 U.S. at 334-35. And Washington appellate courts permit manifest constitutional issues to be raised for the first time on appeal. RAP 2.5(a)(3). While they arise most commonly in criminal appeals, a party may raise a constitutional issue for the first time on appeal in a civil case in certain circumstances. State v. WWJ Corp., 138 Wn.2d 595, 601-02, 980 P.2d 1257 (1999) (RAP 2.5(a)(3) applies to civil cases). But to successfully present a constitutional issue initially on appeal, the factual record must be sufficiently developed to address the merits of the

claim. Id. at 602, 606 (while RAP 2.5(a)(3) applied to excessive fines issue raised in a civil case, the record was inadequate to assess the "gravity" of offense). In the absence of such a record, no error is manifest. Id.

It does not appear that Bart challenged any procedural aspect of the proceeding below. He did not mention discovery, request live testimony as permitted under RCW 7.105.200(5), or ask to cross examine any witness. Insofar as Bart now challenges the court's consideration of hearsay evidence, he did not object below and submitted hearsay evidence in support of his own response. See Blackmon v. Blackmon, 155 Wn. App. 715, 722, 230 P.3d 233 (2010) (rules of evidence, including the hearsay rule, do not apply in protection order proceedings); ER 1101(c)(4) (evidentiary rules "need not be applied" in protection order proceedings under chapter 7.105 RCW). Indeed, Bart expressly relied on out-of-court statements, including those in medical reports Danielle provided, to argue that the evidence established "domestic discord but not domestic violence." The superior court had no opportunity to evaluate the sufficiency of the process in light of Bart's objections or to consider adjustments. Because the record is insufficient, Bart's due process claim lacks a factual predicate and review is not warranted under RAP 2.5(a)(3).

Firearms Restrictions

Finally, Bart claims that the "coercive control" DVPO violates his rights under the Second Amendment because firearm restrictions premised on acts of coercive control have no "historical analogue."[4] See New York State Rifle & Pistol Ass'n v. Bruen, 597

---

[4] Bart does not challenge the constitutionality of RCW 9.41.800, the statute which required the trial court to include firearm restrictions in the DVPO.

U.S. 1, 29, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) (refining framework for Second Amendment claims). Bart relies on the United States Supreme Court's most recent Second Amendment case, United States v. Rahimi, 602 U.S. 680, 690, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024), wherein the Supreme Court rejected a facial challenge to the constitutionality of a federal statute which prohibits the possession of a firearm by an individual subject to a domestic violence restraining order. 602 U.S. at 701. The Court held that an "individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. at 702.

Bart fails to acknowledge that the DVPO is based on a finding of "domestic violence" supported by evidence of physical assault. And more to the point, as in Rahimi, the trial court found that Bart represented a "credible threat to the physical safety" of the protected individuals. Rahimi does not undermine the constitutionality of the firearm restrictions imposed in the DVPO.[5]

Attorney Fees on Appeal

Danielle requests an award for attorney fees on appeal under the DVPO statute, RCW 7.105.310(1)(j). In his reply brief, Bart asks this court to sanction Danielle under RAP 18.9(a) for "bad-faith" in defending the DVPO and asserting mootness.

---

[5] Throughout his briefing, Bart refers to matters outside the appellate record and attempts to introduce documents that were not before the trial court. RAP 10.3(a)(8) (an appendix to a brief "may not include materials not contained in the record on review without permission from the appellate court."). We consider only the evidence and facts properly before us. In addition, Bart raises claims for the first time in his reply brief. We decline to address these arguments, as we typically do not address arguments made for the first time in reply, in part because the other party has no opportunity to respond. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

RAP 18.9(a) provides that this court may order a party that files a frivolous appeal to pay sanctions. Danielle prevails on the merits. And more fundamentally, she is not the appellant and did not file a frivolous appeal. RAP 18.9(a) cannot justify sanctions against Danielle.

On the other hand, RAP 18.1(a) allows us to award attorney fees on appeal if applicable law grants the party the right to recover attorney fees. RCW 7.105.310(1)(j) vests the court with discretion to require the respondent in a protection order proceeding "to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." We exercise our discretion under this statute to award Danielle her attorney fees on appeal, subject to her compliance with RAP 18.1.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____        _____
Birk, J.                          Smith, J.