[Nos. 26403-0-II; 26407-2-II. Division Two. September 20, 2002.]

ROBERT M. HOUGH, ET AL., *Petitioners*, v. FRANK W. STOCKBRIDGE, ET AL., *Respondents*.

534

*Robert M. Hough*, pro se.
*Frank W. Stockbridge* and *Susan Stockbridge*, pro se.

QUINN-BRINTNALL, J. — Robert and Diana Hough petitioned the Pierce County District Court to obtain a civil antiharassment protection order against their neighbors, Frank and Susan Stockbridge. On its own motion the district court issued mutual restraining orders: one against the Stockbridges prohibiting them from contacting the Houghs and another against the Houghs prohibiting them from contacting the Stockbridges.

Eleven months later, the Houghs moved the court for extension of the order prohibiting the Stockbridges from contacting the Houghs and for reconsideration of the order restraining the Houghs from contacting the Stockbridges. The district court declined to extend the orders against the Stockbridges and ruled that the issue to modify the order against the Houghs was moot because the orders were soon to expire. The superior court affirmed.

Because a district court lacks authority to issue mutual restraining orders sua sponte when the respondents did not file a petition for such an order, we reverse that portion of the order prohibiting the Houghs from contacting the Stockbridges. Because the Houghs failed to state the reasons why the protection order should be renewed in their petition for renewal of the restraining order against the

Stockbridges, the Stockbridges' burden to prove that the harassment would not resume did not arise. Therefore, we affirm the district court's denial of the Houghs' motion to renew the orders. Because we vacate the antiharassment order against the Houghs on other grounds, we do not reach the Houghs' constitutional arguments.

## FACTS

Robert and Diana Hough obtained an ex parte civil protection order against their neighbors, Frank and Susan Stockbridge,[1] on August 10, 1998. Two weeks later, the district court held a show cause hearing, at which the Stockbridges were represented by counsel. Mr. Hough represented himself and his wife.

Although the Stockbridges did not seek an antiharassment order against the Houghs, at the show cause hearing, their attorney discussed some of the harassment his clients allegedly endured at the Houghs' hands. The Stockbridges were never placed under oath; their attorney simply related some incidents that allegedly had occurred between the parties.[2]

When ruling on the Houghs' petition, the judge explained that "my job here is to keep the peace, and if I ever saw a situation where it looked like the peace was in jeopardy, this is it." Clerk's Papers at 39. After determining that neither neighbor had a reason to contact the other, the

---

[1] Mr. Hough complained that Mrs. Stockbridge removed some of his no-trespassing signs from his property and subjected him to "verbal harassment." Clerk's Papers (CP) at 31. Hough also alleged that Mr. Stockbridge had "an affinity for fireworks" and had thrown fireworks from his property to Houghs'. CP at 32. Stockbridge also allegedly posted a sign on county property that read, "Whoever said love thy neighbor never met ours." CP at 33. The Houghs' petition also requested protection from another neighbor, Dianne Turner, who is not a party to this appeal.

[2] According to the Stockbridges' counsel, Mr. Hough had called numerous state and local agencies reporting multiple, frivolous complaints about the Stockbridges. For instance, he falsely reported to some agency that the Stockbridges lacked proper building permits for their driveway and deck; he called the Humane Society to report that their peacock was loud and the dogs were loose; he called the police and/or fire department when they barbecued or set off fireworks; and he stood on his roof with a video camera and/or binoculars pointed at the Stockbridges' home.

judge issued mutual antiharassment orders, even though the Stockbridges stated that they were not seeking orders against the Houghs. The Houghs did not object. The reciprocal order was for one year.[3]

Nearly a year later, in July 1999, the Houghs sought to lift the order preventing their contact with the Stockbridges and to extend the Stockbridge antiharassment order. They titled the document a "Motion to Reconsider." A different district court judge refused to consider the matter, and the orders expired under their original terms approximately one month later (August 1999).

The Houghs appealed this decision to the Pierce County Superior Court, but the court did not reach the merits of the case, ruling only that the issue was moot because the orders had expired.

We granted the Houghs' motion for discretionary review and address two issues. First, does a court have authority to issue reciprocal restraining orders in the absence of mutual petitions? And second, in evaluating the Houghs' request for an extension of their restraining order against the Stockbridges, did the trial court err in placing the burden of proving continued harassment on the Houghs?

## ANALYSIS

MOOTNESS

■ The Houghs argue that even if this case would otherwise be moot, it is not moot if the court can provide effective relief by removing the antiharassment order against them from their record. We agree.

A case is considered moot if there is no longer a controversy between the parties, if the question is merely academic, or if a substantial question no longer exists. *Penta-*

---

[3] The order is a form order with boxes to check for the appropriate circumstances. There are boxes appropriate when only the respondent is to be restrained as well as boxes when the restraints are to be mutual. The wording in these form orders is not suggested by chapter 10.14 RCW, and the idea of reciprocal or mutual restraining orders is not discussed anywhere in the chapter.

*gram Corp. v. City of Seattle*, 28 Wn. App. 219, 223, 622 P.2d 892 (1981). But a case is not moot if a court can still provide effective relief. *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983) (citing *Pentagram Corp.*, 28 Wn. App. at 223). The Houghs claim that the court can still provide the "effective relief" by cleansing their records and reputations "of the stigmatizing, **erroneous** and *void* orders." Br. of Appellant at 13 (emphasis in original).

Additionally, this court may decide a case, even if moot, where the matter is of continuing and substantial public interest. *In re Det. of Swanson*, 115 Wn.2d 21, 24, 804 P.2d 1 (1990); *In re Det. of V.B.*, 104 Wn. App. 953, 959, 19 P.3d 1062 (2001). In deciding whether to review a moot matter, we consider (1) the public or private nature of the question, (2) the desirability of an authoritative determination that will provide future guidance to public officers, and (3) the likelihood the question will recur. *Swanson*, 115 Wn.2d at 24-25 (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)).

We hold this case is not moot; the Houghs seek to cleanse their record of the continuing stigma of the antiharassment order. Moreover, the form order in the record before us suggests that the district court frequently, if not routinely, issues mutual restraining orders and requires those petitioning the court for relief to assent to their entry as a condition of obtaining access to the court. These issues are clearly of public importance and deserving of an authoritative determination.[4]

TRIAL COURT'S AUTHORITY UNDER CIVIL ANTIHARASSMENT STATUTES

The legislature enacted the civil antiharassment statutes in 1987. *See* LAWS OF 1987, ch. 280, §§ 1-22. They authorize a court to enter a civil antiharassment order if it finds by a preponderance of the evidence that "unlawful harassment" exists. RCW 10.14.080(3).

---

[4] The Houghs raise an additional argument that this court may reach the merits of their appeal under chapter 7.24 RCW, the Uniform Declaratory Judgments Act. But the Houghs did not file a declaratory judgment action; this case is a discretionary review of a RALJ (Rules for Appeal of Decisions of Courts of Limited Jurisdiction) appeal.

The legislature acknowledged the increasing occurrences of harassment and stated its intention to provide quick and inexpensive relief to victims:

> The legislature finds that serious, personal harassment through repeated invasions of a person's privacy by acts and words showing a pattern of harassment designed to coerce, intimidate, or humiliate the victim is increasing. The legislature further finds that the prevention of such harassment is an important governmental objective. This chapter is intended to provide victims with a speedy and inexpensive method of obtaining civil antiharassment protection orders preventing all further unwanted contact between the victim and the perpetrator.

RCW 10.14.010.

The elements of "unlawful harassment" are (1) a knowing and willful (2) course of conduct (3) directed at such specific person (4) which seriously alarms, annoys, harasses, or is detrimental to a person and (5) serves no legitimate or lawful purpose. RCW 10.14.020(1); *Burchell v. Thibault*, 74 Wn. App. 517, 521, 874 P.2d 196 (1994).

To obtain an antiharassment order, the person alleging that he is being harassed must file a petition and affidavit stating the specific facts and circumstances underlying the petition. RCW 10.14.040(1). The petitioner may obtain a temporary ex parte order on filing the petition. RCW 10.14.080(1). Generally, the court then sets a show cause hearing no later than 14 days from the issuance of the temporary order.[5] RCW 10.14.080(2). Generally, personal service must be made on the respondent no less than five court days before the hearing. RCW 10.14.070. If the court finds by a preponderance of the evidence that unlawful harassment exists, then "a civil antiharassment protection order shall issue prohibiting such unlawful harassment." RCW 10.14.080(3). The order shall be effective for a year or less, unless the court makes an additional finding that "the

---

[5] Unless service of the petition on the respondent is by publication.

respondent is likely to resume unlawful harassment . . . when the order expires." RCW 10.14.080(4).

Once the court issues an order, the court clerk forwards the order to the appropriate law enforcement agency for entry into the computerized criminal intelligence information system (the same system that lists outstanding warrants).[6] RCW 10.14.110. Violation of an antiharassment order is a gross misdemeanor and may subject the violator to a contempt finding and possible incarceration. RCW 10.14.120, .170.

■ Here, the trial court erred in issuing the antiharassment order against the Houghs because, under the plain wording of the statutes in chapter 10.14 RCW, there was (1) no petition filed against them, (2) no affidavit outlining the harassment they committed, (3) no notice to them that an order against them could issue, and (4) no admissible evidence of any harassment. The absence of any one of these elements precludes the court from issuing the order.

We note that the language above the signature on the court's form petition that the Houghs initially submitted reads as follows: "I understand that by submitting this petition I place myself under the jurisdiction of this Court and may be subject to a corresponding antiharassment order." Temporary Antiharassment Protection Order and Notice of Hearing.[7]

■ We are not aware of any authority that allows a court to require a petitioner seeking protection from harassment to waive statutory petition and proof requirements before obtaining access to the court. Access to courts is a fundamental constitutional right. *See Bounds v. Smith*, 430

---

[6] Evidence of the order against the Houghs should already be removed from the law enforcement computer as RCW 10.14.110(1) requires that law enforcement agencies shall expunge expired orders from the system. The orders in this case expired in August 1999.

[7] This document was included in the appendix to the Stockbridges' Response to Motion for Discretionary Review.

U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).[8] Mandatory waiver of due process petition and proof requirements is a limitation on the petitioner's right of access to courts. As with the relinquishment of any constitutional right, waiver of access to courts must be a voluntary, knowing, and intelligent act. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Judges may regulate, but not deny, access to courts. *In re Marriage of Giordano*, 57 Wn. App. 74, 77, 787 P.2d 51 (1990). But regulations must "rationally serve[] a legitimate end." *Giordano*, 57 Wn. App. at 77.

A statement warning the petitioner that a corresponding order may issue and declaring that by requesting the relief due him from the court he subjects himself to the court's jurisdiction does not convey upon the court the power to issue such an order. Under the antiharassment statute, there must be a proper reciprocal petition filed before an order may issue.[9] Here, the Stockbridges did not file a petition requesting an antiharassment order against the Houghs. In the absence of such petition, the court lacked the authority to issue the order.

BURDEN OF PROOF FOR RENEWAL OF ANTIHARASSMENT ORDER

As to the restraining order against the Stockbridges, the Houghs claim that the trial court improperly assigned them the burden of proving that harassment would resume, instead of requiring the Stockbridges to prove the harassment would *not* resume. The Stockbridges claim that the Houghs never sought extension of the order, only to modify it to remove mutuality.

---

[8] The Supreme Court has grounded the right of access to the courts in several provisions of the Constitution, including the petitions clause of the First Amendment, the Privileges and Immunities Clause of Article IV, the Due Process Clause of the Fifth Amendment, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12, 122 S. Ct. 2179, 2186-87 n.12, 153 L. Ed. 2d 413 (2002).

[9] We note that a policy of making antiharassment orders mutual may result in victims' reluctance to seek such orders, fearing the consequences of having an antiharassment restraining order against them on their record and in the law enforcement computer. Such reluctance would defeat the legislative intent to provide effective relief through antiharassment orders. *See* RCW 10.14.010.

Removing the mutual orders appears to have been the Houghs' primary focus at the reconsideration hearing. But it was not their only claim. The Houghs' motion also requested that the orders against the Stockbridges be made permanent

> because their actions continue to indicate a propensity for illegal and un-civil behavior which is likely to result in future unlawful harassment of the petitioners. This propensity is indicated by actions such as verbally and visually taunting the petitioner and threatening the petitioner by swerving their automobile over the center of the road when approaching the petitioner's oncoming vehicle. We also request that the Stockbridges['] minor children be included as additional respondents on said permanent order.

Mot. to Reconsider, Ex. II. In addition, at oral argument on the motion, Mr. Hough stated that extension of the order was included in the relief they sought in the "motion for reconsideration."[10]

 In a motion to extend an antiharassment protection order, the respondent has the burden of proving that harassment will not resume with the expiration of the order. But this obligation arises only after the petitioner has presented reasons for seeking renewal of the order:

> At any time within the three months before the expiration of the order, the petitioner may apply for a renewal of the order by filing a petition for renewal. The *petition for renewal shall state the reasons why the petitioner seeks to renew the protection order*. Upon receipt of the petition for renewal, the court shall order a hearing which shall be not later than fourteen days from the date of the order. . . . The court *shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume harassment* of the petitioner when the order expires. The court may renew the protection order for another fixed time period or may enter a permanent order as provided in subsection (4) of this section.

---

[10] Under RCW 10.14.080(5), the proper way to extend antiharassment orders is to file a "petition for renewal," not a motion to reconsider or modify.

RCW 10.14.080(5) (emphasis added). The statute requires a two-step process: First the petition for renewal must state the reasons why the protection order should be renewed and second the court must grant the petition *unless* the respondent proves that he will not resume harassment when the order expires.

While the judge did not clearly place the burden on the Stockbridges to prove that they would not resume harassment, he cursorily considered extending the order and found that the evidence before him did not warrant an extension.[11] Arguably, this improperly placed the burden on the Houghs to prove that harassment would resume, but it is clear from the comments that the judge did not believe that the orders had been justified when issued.

Before the respondent's burden of proof arises, a petitioner must first meet his initial burden to "state the reasons why the petitioner seeks to renew the protection order." *See* RCW 10.14.080(5). The Houghs made only conclusory allegations in their motion (quoted above).

DENIAL OF COSTS

 The Houghs also claim that the judge erred in denying their request for costs under RCW 10.14.090(2). This was not error. Under that statute, "[t]he court *may* require the respondent to pay the filing fee and court costs, including service fees, and to reimburse the petitioner for

---

[11] The *hearing focused on past examples of harassment on both sides.* The district court denied the Houghs' request for extension and modification of the orders, stating its view that the trouble between the neighbors was silly:

> I'm not going to go through this. This is obviously one of these petty, silly neighborhood disputes that drive me crazy. Now [the judge] probably thought, well, maybe if I enter this order, making it mutual, it will calm things down. But if you have people who want to do odd things like watch neighbors with binoculars, they're going to do them whether there is court order or not. My own feeling about these is often we shouldn't enter these orders because I didn't hear the original hearing. . . . I am amazed by the kind of disputes we get in here, but there are these petty things. . . . [T]his kind of dispute could probably be solved by Jenny Jones or Jerry Springer, or perhaps Judge Judy, but I think frankly these are a real waste of the court's time, and so far, Mr. Hough, *all I've heard is something indicating this order should be allowed to expire August 24th,* and then you can all call the police and fire department all you want after that.

CP at 21-23 (emphasis added).

costs incurred in bringing the action, including a reasonable attorney's fee." RCW 10.14.090(2) (emphasis added). The trial judge had the discretion not to order fees, and we will not disturb that ruling.

We reverse in part, affirm in part, and remand with directions to the district court to vacate the protection orders entered against the Houghs and order expungement of any record of the protection orders against the Houghs entered in this matter.

HUNT, C.J., and ARMSTRONG, J., concur.

After modification, further reconsideration denied November 8, 2002.