# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LISA LITTLETON,<br><br>     Respondent,<br><br> v.<br><br>TERRY GROVER,<br><br>     Appellant. | No. 51217-3-II<br><br>UNPUBLISHED OPINION |

BJORGEN, J.P.T.[*] — Terry Grover appeals from the superior court's order affirming an anti-harassment protection order issued by the district court in favor of Lisa Littleton.

He argues that (1) the district court erred in granting the order because it improperly found unlawful harassment and (2) the order was an unconstitutional prior restraint on his free speech rights. Littleton argues the case is moot because the order has expired. Grover counters that the case is not moot because we can still provide effective relief.

We hold that (1) the appeal is not moot, (2) the district court did not err in ruling that Grover engaged in unlawful harassment under the statute, (3) the order was not an unconstitutional prior restraint, and (4) certain elements of the order were not narrowly tailored to serve a compelling state interest and thus fail the applicable strict scrutiny test. Therefore, we hold that the conditions failing strict scrutiny are invalid. We otherwise affirm the order.

---

[*] Judge Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW RCW 2.06.150.

FACTS

Grover is the chief executive officer and chief financial officer of The Government Procurement Store Inc., also known as Global GPS. Global GPS owns the registered trademark name, EnviroLux. Littleton is the president of Twice the Light (TTL), a lighting sales and installation business. The two companies entered into a licensing agreement allowing TTL to use the trademark name EnviroLux and stating that Global GPS was not to be responsible for warranty claims related to EnviroLux.[1]

This business relationship collapsed, culminating in a June 29, 2015 e-mail from Grover to Littleton titled "Defcon 1" (Defcon 1 e-mail). The Defcon 1 e-mail included copies of two private e-mails Littleton had sent to third parties, including one she had sent to her attorney. In that e-mail, Grover stated that he had "copies of all [Littleton's] Internal emails since day 1" and that "[a]ll emails are on flash drives in 2 separate safety deposit boxes, addressed to 11 different individuals, including the bank, in case I get hit by a bus." Clerk's Papers (CP) at 352. Grover also threatened, "I have many other emails that would reflect badly if put in wrong hands." CP at 354. At the end of the e-mail Grover stated, "I just want to move on." CP at 354. This was the last communication Grover directly had with Littleton.

On August 4, 2015, TTL's attorney sent EnviroLux a cease and desist letter threatening legal action and demanding, among other things, that EnviroLux not access TTL's communications or make any comments to any third party regarding TTL's products and manufacturing standards. A month later, EnviroLux sent a response letter describing TTL's alleged contract breaches and EnviroLux's related losses. It was around this time that EnviroLux

---

[1] In keeping with the terminology in Grover's brief, we refer to Grover's company as EnviroLux.

started receiving complaints from customers who said Littleton had claimed that EnviroLux was responsible for the warranty on defective products.

Those complaints prompted Grover to start a blog ostensibly to address the warranty issue, protect EnviroLux's reputation, and comment on Littleton's and TTL's business practices. As a part of this effort, Grover posted several private e-mails from Littleton to other third parties that contained personal information about Littleton, private bank account numbers, and the personal cell phone numbers of her employees. Grover used the blog to urge customers to complain and take legal action against Littleton and TTL. Grover also sent the blog to one of TTL's key trade allies.

Littleton contacted the police department and met with a detective, who recommended that she seek a protection order. On September 21, 2016, Littleton filed a petition for an anti-harassment protection order to force Grover to "cease email/blog regarding Lisa Littleton/Twice the Light." CP at 350. She asserted that "the . . . blog makes me fearful of what [Grover] might continue to share publicly." CP at 348.

At the hearing on Littleton's petition, following testimony from Littleton, Grover, and the detective, the district court found that Grover's conduct constituted harassment. In finding that Grover's conduct was directed at Littleton, the court specifically focused on the posting of private personal e-mails and targeting third parties that do business with Littleton. The court noted that although this case arose out of a business dispute, "this seems to be a personal vendetta that is aimed directly again at Ms. Littleton personally not just the business." CP at 243.

The district court orally found that (1) the current contact (i.e., the blog) between the parties was initiated by Grover, (2) Grover was given clear notice that all further contact with Littleton was unwanted through a cease and desist letter, (3) Grover's course of conduct was directed at Littleton and appeared designed to alarm or harass Littleton, (4) although the majority of the blog legitimately sought to protect Grover's business interests, Grover's use of private e-mails and Littleton's and others' personal information was not pursuant to any statutory authority and not reasonably necessary to protect his property or liberty interests, and (5) Grover's "personal vendetta" against Littleton had the purpose of creating an intimidating, hostile, or offensive living environment. CP at 239-43.

The district court determined that it would not require Grover to take down the blog or limit his ability to post. However, the court issued an order imposing specific limitations on some of the types of information that could be posted, taking into account Grover's "angry, uncooperative, and defiant" demeanor. CP at 398. Part of the order, which is not at issue in this case, prohibited Grover from contacting Littleton, keeping her under surveillance, and being within 300 feet of her place of employment. The disputed section of the order reads:

> [Grover] may not post to any of his blogs the following: emails obtained regarding [Littleton] or Twice the Light if not specifically addressed to [Grover] as intended recipient, no bank account information or personal information, or pictures of [Littleton]. . . . [Grover] must remove prior posts in violation of these terms.

CP at 108. The order was issued on December 14, 2016, and expired on December 14, 2017.

Grover moved for reconsideration, arguing that (1) the alleged photo that he posted was actually a video that should not be prohibited, (2) he had been the intended recipient of some of the e-mails he had posted, and (3) the business dispute was still ongoing and the order prevented him from providing information to customers.

4

The district court denied the motion, noting that because the video was a professional video put out by TTL, it did not fall under the prohibition on posting "personal information or pictures" of Littleton and so did not require modification to the order. CP at 398. With respect to the e-mails, the court acknowledged that it appeared some of the e-mails were shared knowingly with Grover by a third party with whom Grover had a personal relationship. However, the court also noted "grave concern" that a couple of the e-mails posted to the blog appeared to have been altered to list Grover as an intended recipient when the originals had not, though the court declined to make a specific finding to that effect. CP at 398-99. The court also rejected Grover's argument that the order limited his ability to post, noting that the order imposed only minor restrictions that were justified by his demeanor in court and "the ongoing nature of the postings on the blog of an unprofessional, aggressive manner that seem to be a call to action to personally attack [Littleton] as opposed to suggesting legal recourse in the course of ordinary business." CP at 399.

Grover appealed to the superior court, which affirmed the order. Grover then sought discretionary review under RAP 2.3(d), which we granted.

ANALYSIS

I. MOOTNESS

Littleton argues that this case is moot because the protection order has expired and she has not sought to renew it. Grover counters that the controversy is ongoing because he could potentially be arrested for a previous violation of the order and he has been publicly stigmatized by the order. We agree with Grover that the case is not moot.

A.      Legal Principles

A case is moot if there is no longer a controversy between the parties, if the question is merely academic, or if a substantial question no longer exists. *Pentagram Corp. v. City of Seattle*, 28 Wn. App. 219, 223, 622 P.2d 892 (1981). However, a case is not moot if we can still provide effective relief. *Id.* "Effective relief" can include cleansing a person's record and reputation of the "continuing stigma" of an anti-harassment protection order. *Hough v. Stockbridge*, 113 Wn. App. 532, 537, 54 P.3d 192 (2002), *reversed on other grounds*, 150 Wn.2d 234 (2003).

B.      Effective Relief

Grover argues that we can provide him effective relief for two reasons:  (1) he has been publicly stigmatized by the order and wishes to have his record cleansed and (2) he is living under fear of arrest for a violation of the order. We agree with Grover as to the first reason and therefore do not address the second.

In *Hough*, we held that an anti-harassment order placed a continuing stigma on the restrained party and that we had the power to remove that stigma with a favorable decision. 113 Wn. App. at 537. We held also that such a decision constituted effective relief, thus avoiding mootness. *Id.* We see no significant difference between *Hough* and the circumstances presented here in the creation of a stigma or the provision of effective relief. Therefore, the present appeal is not moot. We could still provide Grover with effective relief by removing any stigma of the order.

## II. UNLAWFUL HARASSMENT

Grover argues the trial court erred by granting the protection order because there was insufficient evidence that his actions constituted unlawful harassment. We disagree.

A.   Legal Principles and Standard of Review

We review a trial court's decision to grant a protection order for abuse of discretion. RCW 10.14.080(6); *State v. Noah*, 103 Wn. App. 29, 43, 9 P.3d 858 (2000). Review of factual determinations is limited to determining whether substantial evidence supports the trial court's findings. *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). Substantial evidence is evidence sufficient to convince a rational person of the truth of the finding. *In re Welfare of T.B.*, 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

A superior court may enter a civil anti-harassment protection order if it "finds by a preponderance of the evidence that unlawful harassment exists." RCW 10.14.080(3). "Unlawful harassment" is a "knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020(2). A "course of conduct" is "a pattern of conduct, composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 10.14.020(1). "Course of conduct" includes "the sending of an electronic communication." RCW 10.14.020(1). The course of conduct must be "such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner." RCW 10.14.020(2). "Course of conduct" does not include constitutionally protected activity, including speech. RCW 10.14.020(1). However,

harassment is not protected speech. *In re Marriage of Meredith*, 148 Wn. App. 887, 899, 201 P.3d 1056 (2009).

B.    Harassment

Grover first contends that the district court's oral findings do not constitute "a finding" of unlawful harassment for the purposes of RCW 10.14.080. Br. of Appellant at 32. The statute, though, does not mandate the entry of written findings, and in the absence of written findings an appellate court generally may look to an oral opinion to determine the basis for the court's resolution of an issue. *In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990). Our task is simply to determine "whether there was a factual basis for the antiharassment order." *Noah*, 103 Wn. App. at 39. We conclude that the transcript of the district court's oral opinion presents a sufficient factual expression to constitute "a finding" of harassment.

Grover next argues that his conduct could not be harassment because it was not "directed at" Littleton, since his blog posts were directed at his customers. Br. of Appellant at 33. Littleton counters that the harassment statute's "course of conduct" definition includes "communications to third parties or the public at large that were directed at harassing the victim." CP at 280. The district court concluded that although the blog purported to be directed at Grover's customers, there was "no question that this [was] directed specifically at Ms. Littleton." CP at 241.

Littleton points to *State v. Becklin*, in which our Supreme Court concluded that the statute's plain language and legislative history "suggest that the definition of conduct amounting to harassment is very broad and could include the manipulation or direction of third parties to achieve the intended emotional distress." 163 Wn.2d 519, 528, 182 P.3d 944 (2008). *Becklin*

involved a course of conduct in which the defendant directed his friends to follow and intimidate his ex-girlfriend, which the court held to fall under the purview of the statutory definition of "course of conduct."[2]  *Id.* at 523, 528-29.

Littleton argues that this case is analogous because the blog posts urged customers to complain and take legal action against Littleton and TTL.  The blog told readers, "Contact your State Attorney General's Office to file a complaint and hope to receive some type of financial restitution before [TTL and another business partner] go out of business."  CP at 342.  It also stated at another point that "[b]elow is important information and evidence for consumers who are looking for financial restitution, and who are seeking litigation against Twice the Light."  CP at 297.

Although the actions urged by Grover's blog were of a smaller scale than the intimidation Becklin orchestrated, they still fall under the *Becklin* court's holding that the statute prohibits "directing or manipulating others to harass the victim."  163 Wn.2d at 530.  It is clear from the record that Grover's e-mails and blog posts were ultimately directed at having an effect on Littleton, in part through eliciting others to complain and take legal action against her.  Hence, the district court did not err in concluding that Grover's course of conduct was "directed at" Littleton because his actions evidenced a "continuity of purpose" to harass her.  *See* RCW 10.14.020(2); CP at 240-43.

Grover also argues that the blog served a legitimate and lawful purpose, because it was a business response to Littleton's actions intended to inform customers about which party was

---

[2] Although *Becklin* dealt with Washington's criminal stalking statute, that statute references the civil harassment statute's definition of "course of conduct."  RCW 9A.46.110; RCW 10.14.020.

responsible for the warranties. In determining whether a course of conduct serves any legitimate or lawful purpose, the trial court should consider whether:

> (1) Any current contact between the parties was initiated by the respondent only or was initiated by both parties;
> (2) The respondent has been given clear notice that all further contact with the petitioner is unwanted;
> (3) The respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner;
> (4) The respondent is acting pursuant to any statutory authority, including but not limited to acts which are reasonably necessary to [protect property or liberty interests];
> (5) The respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner;
> (6) Contact by the respondent with the petitioner or the petitioner's family has been limited in any manner by any previous court order.

RCW 10.14.030.

The district court in this case orally went through these factors, finding: (1) the current contact between the parties was initiated by Grover, (2) Grover was given clear notice that all further contact with Littleton was unwanted through a cease and desist letter, (3) Grover's course of conduct was directed at Littleton and appeared designed to alarm or harass her, (4) although the majority of the blog legitimately seeks to protect Grover's business interests, Grover's use of Littleton's and others' personal information was not pursuant to any statutory authority and not reasonably necessary to protect his property or liberty interests, and (5) Grover's "personal vendetta" against Littleton had the purpose of creating an intimidating, hostile, or offensive living environment.[3] CP at 239-43; RCW 10.14.030.

---

[3] The sixth factor, dealing with contact with the petitioner's family, was not relevant in this case.

The district court accordingly found that, although the majority of the blog served a legitimate purpose, the specific instances of harassing conduct did not. The court focused specifically on the Defcon 1 e-mail, posting of personal and banking information, posting of private e-mails not intended for Grover, and sending that information to third parties with whom Littleton had a longstanding professional relationship as the conduct that served no legitimate purpose. Grover is correct that because the blog itself serves a legitimate purpose, it would be improper for the court to take it down or prohibit him from posting to it. But the blog as a whole is not what the court found to be the "course of conduct" directed at Littleton, nor was it the basis for the order.

We conclude that there was substantial evidence that Grover's course of conduct served no legitimate or lawful purpose. The district court methodically considered each of the factors listed in RCW 10.14.030. Evidence was presented that Grover shared Littleton's private e-mails and personal and banking information with third parties, urged readers to bring legal action against her, and sent her the Defcon 1 e-mail. This is substantial evidence supporting the court's findings that Grover's actions constituted a course of conduct directed at Littleton with the purpose of harassing her and creating a hostile living environment.

It is not for us to second guess the court's credibility determinations. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). As set out above, the record supplies substantial evidence that Grover's conduct was indeed directed at Littleton, that Grover's purpose was to harass her, and that she suffered emotional distress as a result. *See* RCW 10.14.020(2). We hold that the district court did not abuse its discretion in finding that Grover committed unlawful harassment.

11

C.        Limited-Purpose Public Figure

Grover also claims that Littleton is a limited-purpose public figure, and so is afforded less protection in this context than a general member of the public. We disagree.

"[T]he designation of a person as a 'public figure' results in a decrease of the protections against invasions of privacy and defamation of character provided by law." *Tilton v. Cowles Publ'g Co.*, 76 Wn.2d 707, 716, 459 P.2d 8 (1969). The purpose of these and related doctrines is to provide needed "'breathing space'" to the freedoms of speech and the press guaranteed by the First Amendment. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974) (quoting *NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 8 L. Ed. 2d 405 (1963)); *Tilton*, 76 Wn.2d at 714-16. Although neither party presented authority that this doctrine applies equally to harassment, for the purposes of this analysis we will assume that it does.

A person can become a public figure for "a limited range of issues" when she "voluntarily injects [her]self or is drawn into a particular public controversy." *Gertz*, 418 U.S. at 351. Washington follows a five-part balancing test for identifying limited public figures. The test considers whether:

> "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation."

*Clardy v. Cowles Publ'g Co.*, 81 Wn. App. 53, 60, 62, 912 P.2d 1078 (1996) (quoting *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th Cir. 1994)).

The record before us makes clear that this dispute is not a "public controversy," and it does not show that any of these factors describe Littleton or her role in this dispute. We accordingly hold that Littleton is not a limited purpose public figure.

### III. FREE SPEECH

Grover argues that the anti-harassment protection order is an unconstitutional prior restraint on his right to free speech. Littleton argues that the order is not a prior restraint at all, but rather a post-publication civil sanction. We agree with Littleton that the order is not a prior restraint, but hold that it is a content-based restriction subject to strict scrutiny. We conclude that it fails strict scrutiny because the challenged restrictions are not narrowly tailored to serve a compelling state interest.

A.    Standard of Review

We review constitutional challenges de novo. *In re Marriage of Suggs*, 152 Wn.2d 74, 79, 93 P.3d 161 (2004).

B.    Prior Restraint vs. Post-Publication Sanction

1. Federal Constitution

The United States Supreme Court defines "prior restraints" as "'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) (emphasis omitted) (quoting M. Nimmer, *Nimmer on Freedom of Speech*, § 4.03, at 4-14 (1984)). Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints. *Id.*

The Supreme Court first enunciated the prior restraint doctrine in *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). *Near* struck down a statute prohibiting malicious, scandalous, and defamatory publications as an impermissible prior restraint. *Id.* at 702, 722-23. In doing so, the Court noted the important distinction between prior restraint and subsequent punishment, observing that libel laws were the appropriate means of regulating expression. *Id.* at 715.

Prior restraints carry a heavy presumption of unconstitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S. Ct. 631, 9 L. Ed. 2d 584 (1963). To overcome that presumption,

> [a]n order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S. Ct. 247, 252, 5 L. Ed.2d 231 (1960). In other words, the order must be tailored as precisely as possible to the exact needs of the case.

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183-84, 89 S. Ct. 347, 21 L. Ed. 2d 325 (1968).

In *Organization for a Better Austin v. Keefe*, the Court struck down an injunction that prohibited publication "of any kind" that criticized the business practices of a real estate broker. 402 U.S. 415, 419-20, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971). *Keefe* compared that injunction to the statute in *Near*, concluding that "[h]ere, as in that case, the injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of previous publications, distribution of literature 'of any kind' in a city of 18,000." *Id.* at 418-19. The Court noted that "[n]o prior decisions support the claim that the interest of an individual in being free from public criticism of

14

his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."
*Id.* at 419.

In contrast to *Keefe*, in *Bering v. SHARE*, our Supreme Court concluded that an injunction prohibiting picketers of a medical clinic offering abortion services from using certain words was not a prior restraint under federal law. 106 Wn.2d 212, 235, 721 P.2d 918 (1986). The court noted two important distinctions between that injunction and the injunction in *Keefe*. First, unlike in *Keefe*, the only purpose of the plaintiffs in *Bering* in seeking the order was to "'redress alleged private wrongs'" suffered by the physicians and patients of the clinic as a result of the picketers' extreme language and conduct. *Id.* (quoting *Keefe*, 402 U.S. at 418-19). Second, the injunction did not suppress speech "of any kind," but rather particular words that the trial judge feared would have an adverse effect on young children visiting the clinic. *Id.* Hence, the court held that the injunction was "not the classic prior restraint described in *Near* or *Keefe*, and the doctrine of prior restraint should not be applied to this case." *Id.*

The same distinctions are present here. First, Littleton's only purpose in seeking the order was to "redress [the] alleged private wrong" of Grover's harassing conduct. Second, the order does not suppress speech "of any kind," but rather targets only the blog posts the trial court deemed to constitute harassment and leaves Grover free to post to his blog, including his criticisms of Littleton's business practices. For these reasons, following our Supreme Court's interpretation of the First Amendment, we conclude that this order is not a prior restraint under federal law.

2. Washington Constitution

Article I, section 5 of the Washington Constitution "'categorically rules out prior restraints on constitutionally protected speech under any circumstances.'" *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 493-94, 166 P.3d 1174 (2007) (quoting *O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988)). In *Bering*, our Supreme Court distinguished between disfavored prior restraints and more acceptable post-publication civil sanctions. While prior restraints "prohibit exercise of the right before any abuse of the right can be shown," post-publication sanctions "simply prohibit further exercise of the right after a showing of abuse." *Bering*, 106 Wn.2d at 243. Post-publication sanctions can accordingly be imposed consistent with article I, section 5, so long as they are narrowly drawn to serve a compelling state interest. *Id.* at 243-45.

In *Meredith*, we concluded that a restraining order preventing Meredith from contacting any government agency about his wife's immigration status was a prior restraint, rather than a permissible post-speech restriction, because the trial court had not found that Meredith had abused his right to speak by attempting to have his wife deported. 148 Wn. App. at 897. Instead, the trial court based its order on the fact that Meredith was not acting in their daughter's best interest, since she could have been deported along with her mother. *Id.* Thus, the order restricting Meredith's future speech was not based on an underlying showing of abuse of the right to free speech.

In this case, on the other hand, the district court issued the order directly in response to Grover's unprotected harassing speech. Littleton demonstrated to the district court's satisfaction that Grover's posts of her e-mails, personal information, and banking information constituted

harassment. The resulting anti-harassment protection order was crafted specifically to address those posts and thus was clearly designed to "prohibit further exercise of the right after a showing of abuse." *Bering*, 106 Wn.2d at 243. Indeed, the order explicitly commands Grover to "remove prior posts in violation of these terms." CP at 245. Like the injunction in *Bering*, the order was imposed "*after* actual publication and only to prevent further harm" to Littleton. *Bering*, 106 Wn.2d at 243.

We accordingly hold that under state law the order is a post-publication sanction, not a prior restraint.

C.     Strict Scrutiny

Because the order is a content-based restriction on Grover's speech, the proper lens for its analysis is strict scrutiny. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000); *Collier v. City of Tacoma*, 121 Wn.2d 737, 748-49, 854 P.2d 1046 (1993). Our inquiry under both federal and state law is whether the order serves a compelling state interest and is narrowly tailored to serve that interest. *Citizens United v. Fed. Elections Comm'n*, 558 U.S. 310, 340, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010); *Bering*, 106 Wn.2d at 237.[4]

"Protecting citizens from harassment is a compelling state interest." *Noah*, 103 Wn. App. at 41. It is clear the order satisfies the first prong of strict scrutiny.

To be narrowly tailored, a regulation "need not be the least restrictive or least intrusive means" of serving the government's interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 798-

---

[4] Although *Bering* uses the term "narrowly drawn" instead of "narrowly tailored," we see no meaningful difference in applicable case law between the two phrases.

17

99, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Nevertheless, it must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799. A restriction "is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-10, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)).

Grover argues that the order impermissibly restricts his commercial speech rights. It is true that a court order cannot validly restrict Grover from sharing opinions and facts about Littleton's business practices. *Keefe*, 402 U.S. at 419. However, that is not what the district court ordered in this case. Unlike the injunction in *Keefe*, which prohibited an organization "from passing out pamphlets, leaflets or literature of any kind," the order here continues to allow Grover to publish blog posts and criticize Littleton's business practices,[5] so long as he does not publish the specific information that the court found to constitute harassment. *Id.* at 417. Because protecting Littleton from harassment is a compelling state interest, the order as a whole does not fail strict scrutiny for this reason. *See Noah*, 103 Wn. App. at 41.

However, some of the order's individual restrictions are not narrowly drawn to serve the state's interest in preventing harassment. Specifically, the prohibition on posting "personal information and pictures" of Littleton is not narrowly drawn to protect Littleton from harassment, because that phrase could cover types of information that the district court did not find to constitute harassment. That phrase, for example, could prevent Grover from posting the

---

[5] Indeed the district court specifically noted, "I'm not requiring that the blog be taken down, nor am I limiting his ability to post." CP at 244.

legitimate criticism of Littleton that the order purports to permit, because "personal information" could potentially cover such innocuous details as Littleton's name or profession.  The trial court did not find that Grover misused Littleton's personal information broadly, but rather that he misused some of the sensitive information contained in the e-mails he should not have been privy to.  Hence, the broad proscription on using "personal information" targets and eliminates "more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485 (quoting *Taxpayers for Vincent*, 466 U.S. at 808-10.)

Furthermore, in its finding of unlawful harassment, the trial court did not find that any posting of Littleton's picture was part of Grover's harassing conduct.  In fact, in its order on Grover's motion to reconsider, the district court specifically found that the YouTube video, the one example of a time Grover posted a picture of Littleton, did not violate the order's prohibition of "personal information or pictures." CP at 398.  This clearly suggests that the posting of the video was not part of the harassing course of conduct the court sought to enjoin.  The restriction on posting pictures of Littleton goes beyond the "'evil'" the order intended to remedy, and so was not narrowly tailored. *Frisby*, 487 U.S. at 485 (quoting *Taxpayers for Vincent*, 466 U.S. at 808-10).

The same is true of the prohibition on posting e-mails "regarding" Littleton that are "not specifically addressed to" Grover.  The order paints with broad strokes to prevent Grover from posting any e-mails regarding Littleton not addressed to him, whether or not they bear the characteristics of those e-mails that supported the district court's finding of harassment.  This restriction could apply to e-mails that Grover otherwise would be within his rights to post, thereby going beyond the "'evil'" the order intended to remedy. *Id.* (quoting *Taxpayers for*

19

*Vincent*, 466 U.S. at 808-10). For example, it would seemingly prohibit Grover from posting a validly and legitimately obtained e-mail that only mentions or even praises Littleton. It also could bar Grover from posting e-mails containing otherwise legitimate criticism of Littleton's business practices. Such e-mails would doubtfully fall within the harassing course of conduct identified by the district court. Because this restriction prohibits more than the harassing conduct, it is not narrowly tailored.

For these reasons, we hold that the restrictions on posting "personal information" and "pictures of Littleton" and "emails obtained regarding [Littleton] or Twice the Light if not specifically addressed to [Grover]" were not narrowly tailored to serve a compelling state interest.[6] CP at 108, 398. Thus, they fail strict scrutiny and are invalid.

D.        Vagueness and Overbreadth

Grover also argues that the order's restrictions on posting "personal information and pictures" and "emails obtained regarding [Littleton] or Twice the Light if not specifically addressed to" him are unconstitutionally vague and overbroad. Br. of Appellant at 27-28.

1. Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* To prevent

---

[6] We note, however, that the prohibition on posting bank account information survives strict scrutiny. Unlike the prohibitions discussed above, this restriction specifically targets only the wrongful conduct without reaching protected speech. In this sense it does not "burden substantially more speech than is necessary to further the government's legitimate interest." *Ward*, 491 U.S. at 799.

arbitrary and discriminatory enforcement, "laws must provide explicit standards for those who apply them." *Id.* Where a vague statute intersects with sensitive areas of basic First Amendment freedoms, it "operates to inhibit the exercise of [those] freedoms." *Cramp v. Bd. of Pub. Instruction of Orange County, Fla.*, 368 U.S. 278, 287, 82 S. Ct. 275, 7 L. Ed. 2d 285 (1961). Hence, if a law interferes with the right of free speech, "a more stringent vagueness test should apply." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

Grover contends that the order's restrictions on posting personal information, pictures, and emails regarding Littleton or TTL that are not specifically addressed to him are unconstitutionally vague. These provisions are the same ones that we hold violate strict scrutiny and are invalid. Thus, it makes little sense and would provide no effective relief either to strike these conditions as vague or to remand to the trial court to cure any vagueness in them, especially when the order itself has expired. Although the appeal itself was not moot because of the order's expiration, we see no purpose in requiring the trial court to revise invalid conditions in an expired order to avoid possible vagueness. For these reasons, we do not further analyze the vagueness challenge.

2. Overbreadth

The overbreadth doctrine is an "exception from general standing rules [that] is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 129, 112 S. Ct. 2395, 120 L. Ed. 2d 101 (1992). In other words, the

rationale for the overbreadth doctrine is that it permits an individual whose own speech or conduct may be prohibited

> to challenge a statute on its face "because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid."

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S. Ct. 2568, 96 L. Ed. 2d 500 (1987) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985)).

Grover and his amici do not cite, and we have not located, any instances where this doctrine has been applied to a court order designed only to proscribe the conduct of a single, specific individual. Grover and his amici make no argument to justify why this exception from general standing rules applies to his case when the restrictions he is protesting could not possibly be applied to any other person not before the court. Moreover, the United States Supreme Court has described overbreadth as "strong medicine," employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Because Grover has done nothing to persuade us to employ this "strong medicine" in this case, we decline the invitation.

CONCLUSION

We hold that (1) the appeal is not moot, (2) the trial court did not err in ruling that Grover engaged in unlawful harassment under the statute, (3) the order was not an unconstitutional prior restraint, and (4) certain elements of the order were not narrowly tailored to serve a compelling

No. 51217-3-II

state interest and thus fail the applicable strict scrutiny test. Therefore, we hold that the

conditions failing strict scrutiny are invalid. We otherwise affirm the order.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Bjorgen, J.T.

We concur:

Maxa, C.J.

Lee, J.

23